I'm glad you're here today. Our first case today is Horton v. Rangos, No. 24-1325. Good morning. I'd like to reserve three minutes. That's granted. I want to first discuss the important and novel constitutional question of whether there must be some determination that the government's interests are served before there could be prolonged, and when I say prolonged I mean months or years, of pre-adjudication detention prior to... Except you have not litigated this based on the amount of detention. You've litigated this on the process. Your class isn't defined by the amount that people have been detained. Our complaint raises the issue of prolonged detention. We have not had a chance to... But your claim is not predicated on it. You're making this claim for everybody, including people with short detentions. This particular claim, and again I want to get to the fact that the district court sui sponte dismissed the entire case, including the claims about the various lengths of detention. We're aware of the procedure, but Judge Bevis brings up a good point. This particular claim is not predicated, at least in our perspective, on the length of detention. Right. You could frame a different claim that was about more than the two months that Morrissey treated as reasonable. This claim is not framed that way. Well, not necessarily, Your Honor. I mean, the court could conclude, and it's certainly consistent with our argument, that the length of detention matters for constitutional purposes. Except your class is not defined that way. But the way that the current class is defined under Rule 23 is not necessarily the same legal question as what our claim is. The substantive claims, you might later conclude that we can't certify particular kinds of classes and the district court might be required under Rule 23 to redefine the class. But the constitutional question in this case, what are the circumstances in which the government can detain a person prior to a formal revocation hearing, might turn on, depending on what the court thinks. And certainly there are reasons to think that the length of detention matters. It might turn on how long the detention is. So, for example... Well, why aren't you arguing that at the first hearing, instead of there need to be merely probable cause that there's been a violation, which could be anything consorting with gang members or possessing a hunting rifle, whatever, that there needs to be some determination as to safety to the community, flight risk, in order to hold someone. I mean, we're talking about detention here. That's exactly our argument. Okay, well then take the prolonged out of there. Absolutely. Now, I think that the prolonged nature of the detention is one important thing to consider when you're determining that when you make a decision at that initial hearing, you could be detaining a person for a long period of time. Except that there's T1 and there's T2. There's the time of the hearing, and if it's about the length, then it wouldn't be a violation until time T2. So, it might look very different if the amount of detention was the two months that Morrissey treated as reasonable, versus if it goes on to be multiple months, we have cases in other contexts that say that's a violation. But that depends at which point are we focusing on there being a violation. Understood. Let me take a step back. We are here in this court because we brought a very narrow preliminary injunction motion on one aspect of one of our claims. Right. That was mandatory detention for a group of named plaintiffs who had experienced much longer detention than that, right? So, one of our clients was detained pre-GATU for three years as of yesterday. Another client was a year and a half. Several other clients were many, many months. Other parts of our complaint, and this is one of the strange reasons that we're here in this sort of odd procedural posture, our complaint raises other concerns about the sheer length of some of the detention from a due process perspective. The claim that you first asked your question about, Judge Villes, yes. It's not contingent on whether it's two months or three months or four months. But this is count two we're talking about. Count two. Well, the part of count two that we're talking about here today. Now, count two is a substantive and procedural due process claim that spans a number of different kinds of legal theories. Now, we limited our preliminary injunction motion to the most urgent of them, which was the very long-term and mandatory detention of several of our named plaintiffs. The case itself, and this will be developed further as the litigation goes on, raises all kinds of other issues. Right. Well, let's focus in on the one Judge Rendell raises, all right? In Gerstein and Salerno, which you rely on, you look at risk of flight and danger to the community. But those are cases involving people who are presumed innocent legally. Your clients, people who are on probation or parole, have been found guilty, right? So there's a different justification for holding them based on a violation than there is in saying we're going to take someone who is innocent, whom there is no basis to hold, unless we find a risk of flight or danger to the community. So aren't the main precedents you're analogizing too inept? Absolutely not, Your Honor. And this, I think, gets to the core of this case. Every context of prolonged, regulatory, administrative, non-punitive detention that we cite, so when you're talking about immigration, you're talking about mental illness, you're talking about sexually dangerous predators after their conviction, whether you're talking about pretrial, as the cases that you just referenced, they all have something in common. They all require some determination that a government interest is served by the detention. Now, in Gerstein and Salerno, liberty is at its peak, so you can only be detained if the government determines that there's a risk of flight or danger to the community and there aren't alternatives. This case is a little bit more expansive. Because of the criminal conviction, our clients haven't fully surrendered their liberty, right? The Supreme Court calls it a grievous loss. There is still a interest in bodily liberty. Let's define it. Their interest is a right to bodily liberty. That's what you're basing this on. Yes. The Supreme Court cases call it different things, but at the core of the due process interest is the right to physical bodily liberty. Now, it encompasses all kinds of other things, like the right to be with your family, but I want to just highlight this point. You're also talking about the government's interest as well, right? Absolutely. So the government, and this is the key point. In the probation context, the government has additional interests that it does not have in the pretrial context. So the question that Judge Rendell asked, at that hearing where you're determining can this person be detained until their revocation hearing, the government gets to consider other interests. Unlike the pretrial context, the government gets to consider rehabilitation, punishment, et cetera. It can do that. All we're saying in this case is somebody has to actually make an individualized determination that punishment is served by that detention or that rehabilitation is served by that detention. All right, but we've got Morsi and Gagnon. Don't they do all the work? Absolutely not. Okay. My view is that taking a conservative approach to constitutional holdings and narrowly understanding holdings is an appropriate way because of the sort of magic of the common law. These are 50-year-old cases. So you want to say these are dicta. What parts of Morsi are dicta here? Tell us. We're supposed to, like, dissect this and set a bunch of it aside? No, I don't think Morsi addresses this question because, and this is really the way I think dicta is really determined by, what were the facts of the underlying case? So in Miranda, everything except Ernesto Miranda is unlawfully detained. That's all dicta? No. I think there are certain cases where the court issues prophylactic rules. That's the way that Morsi and Gagnon are written. They have a list of requirements. That's correct. Although Morsi, unlike Miranda, where they, like, if we were coming here disputing some specific sentence in Miranda, it might be a different story. But neither Morsi nor Gagnon specifically address the question, and this is what the Seventh Circuit en banc pointed out in Fahim L. They just don't address the question of whether there should be pre-second hearing detention based on whether there is a government interest. What about Morsi's line that the probable cause determination by preliminary hearing officer, quote, would be sufficient to warrant the parolees' continued detention and return to the state correctional institution pending the final decision? Sufficient? I think there are two ways to understand that. You cannot understand that sentence in Morsi without understanding the later sentence in Morsi where it says, society has an interest in not having parole revoked because of erroneous information or the erroneous evaluation of the need to revoke parole given the breach of the parole condition. So what it's saying is the final hearing has two components, whether there was a violation and what should we do about it. It doesn't really make any sense to, at the initial hearing, to predetermine the question of whether the person should be detained, particularly on the record here, even their own evidence shows that 61 percent of people are not detained after the second hearing. So these are just facts. And the other thing to remember about Morsi and Gagnon, you pointed out earlier, they involve much shorter detention. They didn't specifically raise this issue. Probation has evolved significantly. In Morsi and Gagnon, you were dealing with people who had been sentenced to long terms of confinement. Here we have people who are on misdemeanor probation, 80 percent of the cases who have never been sentenced to confinement. But the reason – We can't just – can we just ignore them? Some of the language that's in Morsi and Gagnon, one line of which Judge Bevis just quoted. I think what you have to understand is – Or are you relying heavily on that it's dicta? Well, I think that sentence is either dicta or not addressing this particular question.  Let's go with this then. If we disagree with you that that is dicta and there's a need to follow it then, how does that affect your argument? Well, Morsi was decided prior to several of the Supreme Court's subsequent cases on the fundamental importance of bodily liberty. I think that the reason to read it narrowly and to say that actually because of the fact – The facts of that case and the arguments of the parties did not involve this question. So the reason to read it narrowly is that when the common law evolves, subsequent Supreme Court precedent becomes relevant. New factual circumstances were 50 years later. And we have a situation now where there's been multiple Supreme Court cases that have held that the fundamental interest in bodily liberty requires a separate finding. We're talking about Zedvitus. We're talking about Salerno, Fuchsia. Okay, but the Supreme Court has repeatedly said, look, if we have two cases and there's one case that's on point, and then there's another one later that seems to undercut the conceptual holdings, follow the one that's on point until we tell you otherwise. Don't just treat it as being implicitly abrogated. So if it's not dicta, we can't ignore it. If you conclude that that is a holding that disposes of a claim that was not brought in Morrissey and not argued and not specifically discussed in the opinion, and you conclude that that is binding precedent and that no subsequent Supreme Court cases about the importance of government finding that its interests are served, then, yes, you would rule against us. But I don't think you can make that. Both Fahim L. and Roberson acknowledged that this was dicta. That's correct. Specifically stated it was dicta. So we would be doing something different finding in there that it was basically at issue when, in Fahim L., they said the parties didn't challenge it, didn't raise detention. That's correct. You'd be disagreeing with the Seventh Circuit. But I think the critical point here is that it would be a weird extension of that case to find that the court held something that wasn't implicated by it. That's another reason to think that it's dicta. We've spent a lot of time on count two, but I do want to ask, on count one, are you pressing the extra discovery point here? I don't see how that isn't a matter for the district court's discretion. I think the critical point is that the trial court dismissed our case in the face of absolutely flagrant disputes of material fact. So just to take one example, the court held in paragraph 12 of its preliminary injunction opinion that people could present evidence and speak and present their own case. That was the only citation to that was to a single question on cross-examination from a witness who actually testified to the opposite. That witness testified that people would be cut off when they couldn't offer their testimony. So this is not really a discovery point. It's that there are genuine issues of material fact. I think the two critical questions are that there are genuine disputes of material fact, and I'll get into some of them on rebuttal. And also, there were claims that we brought that we identified in ECF Doc 144 that were just never ruled on at all. Let's talk about count one. Sorry. Can I go back to something that Judge Beavis asked you? And he said, well, parolees and probationers, people who violate probation, they've been convicted, so they have a different liberty interest. But isn't the liberty interest, it's separate and apart from the fact they've been convicted, it's that there are conditions that have been imposed upon them. And so their liberty interest is restricted based upon they're not supposed to violate those conditions. So isn't it only appropriate to take away that liberty interest, that liberty, when it's been determined that indeed they have violated those conditions? I don't see that it's so different from a pretrial detainee. I mean, here I could think that the probationer or parolee is deemed innocent or presumed innocent of the violation. And that's why the probable cause hearing needs to be done. I don't think it's that different from someone who's arrested and has a probable cause determination initially and also a bail determination and is held over. In fact, that's the language that Morrissey uses, hold. And I don't think hold necessarily means detention. But does it really matter if they've been convicted? Isn't it all about the fact that they've been told they've got these conditions? Don't cross the street against the light. Don't possess a gun. Don't commit another crime. And you know if you do and you've been found guilty of those, you're going back. So I don't think that conviction really has that much bearing on it, does it? Certainly the core components of what the Supreme Court called a grievous loss, the bodily liberty. As you mentioned, when you're on probation, you've been convicted of a misdemeanor, you're on probation in Allegheny County, you have all of the rights that an ordinary citizen has to take your kids to school, to hug your grandmother. All of those things are lost by this detention. It is a grievous loss. I do want to emphasize, though, that our claim is not as radical as your question. We are not, in order to win, we don't have to establish that it's just like pretrial detention or the pretrial context. And I think we can concede, and this is something that's just completely overlooked in the district court, but we can concede that even at the initial, informal, preliminary hearing in the probation and parole context, the government is free to consider additional interests that it can't consider in the other context. Rehabilitation, punishment. All we're saying in this case is the officer that is determining the vital question of whether to take away that liberty, however valuable it is, we think it's extremely valuable, and we've put in a lot of evidence in the district court about how valuable that liberty is, but even if you think it's not quite as valuable, even if you think it's more like the liberty in Chauley-Martin of juveniles, and even Chauley-Martin required a finding that there was a serious risk to the community, all we're saying is the decision-maker at that hearing has to at least consider and make a determination about whether rehabilitation or punishment are served by that detention. And isn't that fundamental? Isn't it fundamental in our case law that someone cannot be held and detained unless they are at risk or safety risk? And there are some presumed detentions. I mean, in the federal system, you know, a lot of drug crimes, it's presumed that you're dangerous to the community, but there has to be – isn't that – and I know I'm throwing you the proverbial softball. Let me put it this way. I mean, well, I think it's both a softball and a very hard question of constitutional law. It's why I became a lawyer. I mean, these are really hard questions. But the key point is we have been unable to find in the history of the American legal tradition a single context in which a person could be detained, either for a long time or even for a short period of time, without some determination that the government's interests are served by that detention. It could be the mental health. And that the government's interest outweighs the individual. Absolutely. Now, we think that the standard should be something like is pre-adjudication detention warranted because other less restrictive alternatives are insufficient to meet the government's interests. But there's no context. Immigration, mental health, civil commitment, sexually dangerous predators. There is just simply no example in American law. And to think that Morrissey and Gagnon would be issuing a holding on that, which diverges from every other area of criminal law or civil law, is, I think, taking that case further than it goes. We're a little over time, but I did want to ask you a specific issue on Count Juan. I think your strongest point is the advance notice point. Now, Morrissey and Gagnon themselves have varying language. And Morrissey talks about advance. And Gagnon at one point is following it. And another point says notice at the hearing. But let's assume advance notice is required. How much advance notice is required? If this is supposed to be a summary hearing, why isn't notice right before the hearing, which your clients got, enough? I think the key point, and this is what the Matthews v. Eldridge balancing test is all about. It's supposed to take factual evidence. And the district court is supposed to consider how much time might a reasonable person need for this kind of thing and what happens at the hearing. And there's a weighing and balancing. And it's heavily factual dependent on the context. But the crucial point is, if Morrissey and Gagnon are correct that you are entitled to present evidence and to confront the evidence against you, you at least need time to call your witnesses. You at least need time to contact people in the community to come bring documents that your employer, to bring proof of your employment, your football coach to talk about how well you've been doing. How much time is that? How do we figure out what's reasonable? What do we guide the district courts with? Well, this is something for the district court to consider. But I think you weigh the three more factors in Matthews. So there's no bright line, right? We're not arguing for a bright line at this point. I think it's clearly not happening in these hearings. Neither party has been able to unearth in years of history a single example of a person confronting witness against them at these hearings. Or a single example of a person actually bringing evidence to the community. If we wanted to give district courts a rule of thumb, what, a couple of days? I mean, are you suggesting a week, a month? Like what might well be enough? This highlights the irregular nature of this posture. That is not a question this court should be answering right now at this juncture in the case. What should have happened is there should be discovery and evidence brought to bear on the questions like, what does this population of people look like? How sophisticated are they? What are the certain risks of erroneous deprivation that are happening? How hard is it to get witnesses? What are the administrative burdens of bringing those witnesses in? How much time does a typical person need to contact? Well, you know, when the Supreme Court confronted something like this in Turner v. Rogers, it said no right to counsel, just have the clerk of the court and then the judge go through a basic list of questions. You know, did you pay? Could you have paid? Tell us your story yourself. So and those were very quick hearings where witnesses were not showing up. And a lot of people wound up jailed afterwards for civil contempt for nonpayment of child support. Like if you're looking for an analogy, that's the analogy. Well, the difference here is that we're not deciding a very simple question about how much money can a person pay. That is the kind of question that lends itself, and this court does it all the time, with affidavits of indigents. You can just look at an affidavit, ask some questions, and figure out how much money do you have? How much can you pay? This is a much more complex question. Were certain types of state and federal or federal law violated? What should we do about that violation? What programs are available in the community? One very important thing to understand is one of the key determinations at the second hearing, as well as at the first hearing, is which types of treatment programs are appropriate. Which beds are available? Those require talking to, you know, social workers. And those require interviewing information officers who have studied what types of treatment programs. Those are not the kinds of questions that lend themselves to a colloquy with a person on a video screen in a jail. And I want to just say this is where it gets so important. So these are all – what does the record show? These are all happening on video screen conferences? The record shows – and this is very troubling. The other side is saying that there's lawyers and counsel and they can present evidence. The actual testimony in ECF 116 of the transcript and in ECF 3-1, all these declarations we put in that this court ignores, is that people are barred from communicating with their lawyers. They can't even tell their lawyers any facts about their case or that they got into a treatment program or anything. And the testimony of Tate Stanford at the hearing, which the district court ignores, he tried to talk to his lawyer and the judge and his video was turned off. We've got a situation where we basically have people held excommunicado in a jail where they can't even communicate with the person who's been assigned to represent them. They're calling that representation by counsel. That's not like any representation I've ever seen. They didn't know that it was their counsel standing there. Some of them didn't even know they had a lawyer. And so I think the point about notice is, especially if you're going to give somebody an attorney, you would have to think that notice at a very minimum includes time to talk to your attorney in private. I mean, I don't understand how if you're standing – if you're on a video screen in a jail, you're told someone you can't even see is your lawyer. Right, right. I get what you're saying. Again, though, we're going to have to write an opinion on this. And so how do we distill some of these principles? I mean, let's say you've been indicted for some other crime. Don't you have notice what the problem is at that point? I mean, in that case, do you really need to have a whole lot of process? I mean, the person's pretty much on notice. Look, I did bad. I got caught. It's tough. I feel like you're looking for something more toward a bright line than just a – you're not satisfied, apparently, with just in the circumstances because you don't like what the results have been. I wouldn't say that at all, Your Honor. We don't like what they're doing, certainly, but that's – they're not getting any notice at all. Well, and presumably if they got notice even, let's say, on a Friday and the hearing is Monday, they could come in Monday and say, listen, I found out Friday that this is happening, but I haven't had enough time. Give me time to get my documents together. Let me give you an example. You are coming into this hearing in a jail on a video screen with someone representing you who you've never spoken to and haven't been able to speak to, and you're told you violated your conditions. You have not even seen what they're saying you did. I don't understand how it's conceivable that somebody could contest the things that are being said about them when they haven't even had time to read those things or understand them, let alone think, well, you know what, they're saying I missed that appointment, but if I called my tumor provider, they could actually say I may have not signed in that day, but I was there that day. There's all of these – the reason even an informal hearing, even the most basic rudiment, even what Morrissey says is required at the most informal of hearings, is the opportunity to present and to confront. And I do not understand how you can do that without notice. Now, I do not think you need to write an opinion that goes into all of these things right now. This case is up here in a posture that is certainly not what we intended. We intended to have a much more rich and deep factual record. You're saying we just go back for a Matthews rebalancing the Matthews, basically. I think that you should go back for a Matthews balancing test on all of the factors. Keep in mind, we haven't even discussed that there is testimony in the record that there is automatic detention for many of these people without even a probable cause finding. There's so many things that are not fully developed for this court that we remand for factual development and all the factors that might go into the question of how much notice is provided, all the factors that might go into the question of what kind of confrontation is warranted, what kind of evidence is warranted at these proceedings. And then you can make a decision. You might decide on a bright-line rule, but you might, in the end, decide on a more reasonableness standard. Presumably, the district court would make extensive findings of fact. That's what we intended when we brought this case. Certainly, that has not happened. And not only did the district court not even make factual, like, for example, on the question of the delay. The delay is relevant both, I think, for the substantive claim we brought about just egregious delay. I think it could be relevant under some conception of the law to whether a finding is required that detention is necessary. But it's also relevant to the procedural protections because it's relevant to the private interest that's at stake. Now, the court said it could not determine on this record whether the delay was reasonable or prejudicial at all. Well, it didn't make a finding about that. Now, the other side has submitted to you a declaration from a witness. Much of its brief on this question of delay is based on the declaration of a witness that they did not produce at the hearing, so we couldn't cross-examine, and whose report they produced after discovery closed. It's in a regular situation where I'm being asked to make arguments on a record where we have not had the chance to develop it. And that's the only reason that I say discovery is important, Judge Bibas, because I agree with you that the key issue is that there are disputes of material fact. All right. We'll hear from you on rebuttal. Thank you. Let's give your friends a chance. Good morning, Chief Judge and judges, and may it please the court.  My name is Nicole Feigenbaum, and I represent the Allegheny County Judicial Appellees, which includes the Administrative Judge, Director of Adult Probation, Judge Bigley, and the hearing officers in their official capacity. Now, to begin, I do want to start with the threshold question, so to speak, which I know we heard from appellant counsel, as to whether Morrissey is binding here. And we believe it is, and we believe the district court got that right. That's going to depend, isn't it, on whether this issue of detention was argued by the parties and was part of that case. Isn't that what it's going to depend on? So I do think you can't ignore, and I think Judge Bibas mentioned this, you can't ignore the discussion and the analysis in Morrissey. But discussion can be dicta. Discussion very often is dicta. While it can be, I do think, and I believe it was Judge Easterbrook in the… Fahimel. Yes, in the Fahimel case, in the concurring opinion, who really got it right there, where these types of cases, Miranda, Morrissey, they could all be considered dicta, but they are collecting cases that codify these procedural and other due process concerns. Therefore, that discussion is relevant because in Morrissey, they weren't unaware of the detention aspect or the length of detention aspect. Well, in Morrissey, they also talked about the fact that after the second hearing, only if it's determined that Parolee did violate does the second question arise, should it be recommended to prison or should other steps be taken to protect society? So it looks like in Morrissey, the court's acknowledging that this issue, the fact that he might be returned to jail, comes after the second hearing. And I believe that that's a fair reading. And I hear in this context what we're talking about is the gagged-down one, the preliminary hearing. And in Morrissey, they logically, and in reading that, what would be the purpose of sort of splitting this, of splitting these determinations, splitting the evidentiary burden into the preliminary hearing and the final revocation hearing if not for this very reason? I think there was a lot of discussion about timing and ability to prepare and front witnesses and things like that. I think when you look at the big picture, a gagged-down one hearing, the preliminary hearing, that stage is to determine probable cause of whether that violation exists and whether it should go forward. And then you do have a more fulsome revocation hearing at some point down the line. Now, what that timing is. But why isn't the revocation here, the first revocation hearing, pretty much like a preliminary hearing of someone who's accused of a crime and of probable cause, but in order to detain him after that finding, you have to have a bail hearing? Why is this situation different? I believe that's different for a number of reasons, and that comes back to the context of what liberty interest is at stake. And in this context, they have a conditional or limited liberty interest. Well, but it's only conditional upon his not being found to have violated, and that doesn't happen until the second hearing. There's no, I mean, the condition is, okay, you're not supposed to associate with gangs. Have you violated that probable cause? But it's only conditioned, the only difference is it has to be found at the second revocation hearing, then, in fact, he did violate. It's not, his liberty is not conditioned upon a probable cause finding. His liberty can be deprived only after he's been found that he did indeed violate. So I don't know why probable cause is a substitute for bail. That's really what you're saying. And I don't believe, if you read Marcy, that that's the best thing. Well, let's forget Marcy. Let's say that Marcy, let's say if it is dicta. Now, maybe we're going to find it isn't. Let's say it is dicta. Then what does that leave you with in terms of what rationale is there for holding someone where at the first hearing all was decided that there was probable cause to believe he did violate, he did consort with gang members, he did have a hunting rifle. Why does that justify detaining him? In this case, Your Honor, that is not what happens. The evidence is clear on the record that there are, it is not just a probable cause hearing. Now, if we're going to. No, wait, wait. It is not just a probable cause hearing? It is not just a probable cause hearing, Your Honor. Was there a determination of danger to society? So if you look at every Gagnon 1 hearing, the hearing officers make a recommendation, whether that's a recommendation of release, whether that's a recommendation of continued detention, whether that's a recommendation for some alternative. Ms. Feigenbaum, I thought the most troubling thing Mr. Katsanis raised was that, well, there's record evidence here that they're not just making some individualized determination. They're automatically calling for the detention. Oh, it's Judge Mariani or whoever it is. We've got to detain. Now, is that in fact the state of the record? And if that were, would it not violate the Gagnon-Morrissey expectation of how these are going to play out? I don't believe that is the state of the record, Your Honor. But to sort of take it in different steps, when it comes to the automatic detention, I can only assume they're referring to a couple of things. So the detainer policy, the underlying initial detainer policy, which guides whether an individual who is accused of a violation, an alleged violation, is even detained in the first place, sets forth the factors and the basis for doing that. And that doesn't mean – The problem, they're not following this detainer policy. Oh, they are following this detainer policy. There's nothing in the record to indicate that they are not following this detainer policy. Well, it says that the probation officer does certain things, not that the hearing officer does certain things. The concern with the detainer policy, within that detainer policy, there's reference to zero tolerance or mandatory court conditions. And what that means is not just an automatic detention for anything. What that references is some sentencing judges. So the presiding judge, in their sentencing order, in their previous order, may include a specific condition, a specific condition of their release or of their probation, that if they violate, they are to be detained. That is what that's referencing. And it's a very, very small percentage. But that stems from the judicial order. So at the original sentencing, this judge said, you better not do this or you are going to go back. And this later reference is a reference back to the judge made something specific about you, and you crossed the trip wire and that's it. Exactly. So that interest in those circumstances are based on the judge's specific order requiring detention. Your fellow counsel on the other side shaking his head will have a chance to respond to that rebuttal. What do you think of the court's ruling in Fahim L. and its analysis under Matthews? So I do have trouble with Fahim L. because I think that it's inconsistent in the majority opinion. Majority's opinion. You read it the way that Judge Easterbrook does. I do. Because in the majority opinion, they agree that due process does not require a bail hearing. But then they go on to send it back. Judicial. Judicial by a judge. Then they went on and analyzed Matthews under plain deprivation of liberty, the erroneous deprivation, and they were hung up on the third prong of Matthews, which really talks about, so what's the cost and burden on the, what is the burden on the government to provide what should be provided here? Which part of the analysis do you dispute? I disagree because I believe they should have followed Morrissey. I believe that that decision was already made, what was required. And there's no need to get into the additional. I'm assuming again that Morrissey's dicta, and we have to go through a Matthews analysis. And Fahim El found a very great deprivation of liberty, which Morrissey tracks how great a deprivation it is for these people to be. Their liberty is basically being deprived of being brought in from their families, losing their job, et cetera. And then the risk of erroneous deprivation, which is pretty clear from the statistics here, that detained at least 71% of the time, then only 39% have their probation revoked. So I think Fahim El on the erroneous deprivation is right. So all you really have left is the government's burden, which we really don't have here, as the district court said. Why shouldn't we send it back for that kind of hearing? I believe we do have the government's burden. And I believe Morrissey, although Morrissey was before Matthews, Morrissey did discuss, they basically had the same balancing test. They discussed those varying interests, and they say the government interest is many. But what is the government's interest here in detaining all these people? The government's interest in post-conviction detention can be numerous. That can include a risk to public safety or absconding, those things that are laid out in the detainer policy below and in practice. The government interest in post-conviction can also be related to punitive and punishment the same way that it's related, because it's related to that conviction and their conditional release. Well, but the conviction really isn't all that relevant. It's the fact that they have violated, and what have they done? That can run the gamut from associating with their brother-in-law who's a gang member to, you know, being out after midnight to possession of a firearm. It can run the gamut. So I guess what's the interest of the government of putting all these people, having all these people detained without a finding that they're a safety risk? And again, I think if we're going to get into that sort of analysis, you do have to look at the facts. And the facts in this case, that's not what's happening. This isn't a situation where there's automatic detention. Everyone's detained, for example, for any technical violation. Or in this case, everyone is not even detained for direct charges, for new criminal charges. I think about a quarter of people who are facing new charges actually are detained initially. So this isn't a situation where detainers are just being thrown about. There is a structure here. But there's no finding that there's a need for their detention. Would you agree? There's no finding that there's a need to detain them. The finding on recommendation for release, I believe that goes toward that. Ms. Feigenbaum? Yes. I did want to make sure we got to cover some issues on count one. Your friend on the other side said, you know, you need some advance notice to be able to get a hearing, but we can't tell you how much. And that there's a bunch of issues in the record where there were genuine issues of material fact on this about how it actually plays out. Do you disagree on either or both? What's the standard? Is advance notice required? If so, how much? And what facts, if any, are, you know, not amenable to summary judgment here? Thank you, Your Honor. Yes, I'll start with the first sort of issue there, which is the notice, which the district court did directly address in its opinion. And I believe the district court got it right. These scenarios, they say they don't want a specific finding as to what would constitute advance notice. But I think in these circumstances, the court understands that this is a preliminary hearing. So notice at that time of hearing is sufficient because they are on notice of the alleged violation. They are alerted to what those allegations are, and they are able to speak. Wait a minute. That's a little circular. We're saying how do they find notice, and you respond, how do they get notice? And you said they have notice. How do they get notice and when? Again, frankly, Your Honor, there's no evidence in the record as to a specific time frame as to this. Well, I mean, for instance, you've got Stanford at pages 354 and 380 who said, I learned when I walked in. You've got Odin Pritchard, who's pretty much the same thing, at page 431. I mean, is that fair? Is that what's contemplated? And is that even, you know, does that, I mean, is that past muster here? I do believe it's past muster because, again, in this particular circumstance, in a situation where someone is detained and you have a preliminary hearing, you want that preliminary hearing to happen quickly, correct? That's why it's preliminary. And in these circumstances below, these individuals all have access to an attorney. They all have the ability to access to an attorney. They all have access to an attorney. Well, some of them said they didn't even know that Thorson was an attorney. And how, if you're brought out of your jail cell or you're brought in off the street and you're brought into a room and they say this is your Gagnon 1 hearing, how are they supposed to confront witnesses? How are they supposed to bring documents in and make their case? They don't even know what they're being brought into the hearing for. I disagree to the extent that they don't know what they're being brought in for. Seventy-five percent of these, in this case, these detainees, are accused and arrested for new charges. They are aware that they are facing new charges, which is generally the – Okay, but they don't know that this, when they're entering this room, that this is going to determine their fate and they're going to be kept in jail. There's nothing to prevent them from seeking a continuance if they wish to contest. Let me ask. So when the Supreme Court confronted this in Turner v. Rogers, they, like, laid out, okay, the clerk of the court should tell you the issue is did you pay, could you have paid, give you some kind of form to fill out, and so that by the time the person walks into the room, he understands, like, look, are you going to contest that you did pay? Are you going to contest you could have paid, right? And so then they said you don't have a right to a lawyer. By the way, there's no right to a counsel here, even though they're being given a lawyer. But they need to know what they're contesting. Now, if you were to tell me these lawyers are coming in with them and consulting them and telling them, hey, let's go over why you're here, that would be different, but it doesn't sound like that is consistently happening. So what would be wrong with saying, look, at some point before you walk into the room, somebody, the bailiff, the clerk of the court, somebody has to say, look, in plain English, here's why you're being dragged into court. It's because you've been charged with this new crime, and if you think that you didn't do it or you think it doesn't amount to a violation of probation, you've got to explain why. And again, Your Honor, I do want to sort of go back to that. In these scenarios, when we're talking about not having an opportunity to confer with their attorney or something to that end, that's not really with appellees. I mean, to the extent that an attorney does or does not choose to confer with somebody. But there's no right to a lawyer here. I'm just saying attorneys could be one way in which you could say, look, the lawyer knows what's going on, but it doesn't sound like that's the case. So if the lawyers, if they're not conferring with lawyers, lawyers aren't doing much, how do we know that they're getting the notice? I do believe that having the attorneys there makes a difference because the attorneys are present, and again, it's in the record. The actual hearings, they begin with a recitation of exactly what is alleged and what they're here for. And then they are given an opportunity, both defense counsel and probationer, to speak. Even that's disputed. It is interesting. In the record below, I believe the majority of the evidence as to what actually happens at these hearings comes from plaintiff's own evidence. They provided a spreadsheet of sorts where they observed 1,500 of these hearings. And in those hearings, they made notes. And 75% of those cases, they noted that they did speak and they did make arguments. And just because someone doesn't speak or doesn't make argument or doesn't contest something, doesn't mean they're not allowed to. And you really have to consider the context of these hearings. When someone is facing new criminal charges, for example, there are a lot of strategic reasons. There are a lot of reasons why they would not want to speak and not want to contest. But all these different circumstances need to be sorted out by the district court, do they not? I mean, these are findings of fact that you're saying we can make, but there's evidence that they didn't even, they were stopped because they were definitely deprived of an ability to speak. So, I mean, there's evidence all over the place that needs to be sorted out by the district court. I don't believe so. I believe the district court already did address that. The district court found that the evidence demonstrates that they are able to speak. Don't we have to look at this all through the lens of summary judgment? I mean, we've been talking about genuine issues of material fact here. And you're like, well, in the main, this happens. And I don't know if that's going to really meet what you need to meet. And, Your Honor, I do want to briefly address some of the alleged disputes of material fact. Okay. Because I think the facts that appellants point to in their briefing are either not truly disputed facts or they're not disputed material facts in the same sense that they truly matter for this court's analysis. One example, of course, is sort of this theory that these probationers are precluded from conferring with attorneys, which there's no evidence of record. And a lack of evidence does not mean a dispute in evidence. And that's really what they point to is a lack of evidence in most instances. And they also do allege that there's credibility determinations that were made that were improper. But when they do that, they say that the district were erred in relying on defendant's testimony. But there's no testimony to contradict a lot of that testimony that they point to. So it's not a credibility determination. Well, except you have to view it. At summary judgment, as Judge Chigares points out, you have to view the facts in the light most favorable to the plaintiff. Of course. So we're stuck with that. And that creates, because there are facts that are favorable, that creates a genuine issue. And, Your Honors, I do believe my time is up. Did you have something else you wanted to add? We gave your friend a little more time. I appreciate that. I do just briefly want to add, you know, we've gone through whether or not Morrissey is binding, which we do believe it is. But I must stress that even if we wanted to get into the issues of a Matthews balancing test, the district court did address that. The district court did address that, and they also got it right. Because if you look at the facts in this case, that balancing test is met. It is no question that there is a limited conditional bodily interest of liberty. And there's no question that government interest is many. And looking at the writings, looking at the practice, looking at the totality of the circumstances, which if you're going to look at the balancing test, you need to look at that, from start to finish in Allegheny County, there is no question that they are making these determinations, and they are having these considerations, and that there is truly not an issue here with the risk of erroneous deprivation. Thank you, Counsel. Thank you. Did you have anything else? Nothing else. Okay. Thank you, Counsel. I want to start with Judge Bevis' question about this conversation about zero tolerance and sentencing conditions. Everybody here understands that that's not the primary driver of the mandatory detention. The primary driver is what we allege to be informal policies. Judge Mariani, Judge Bigley, perhaps other judges, there's testimony from the hearing officers themselves in the deposition. Doc PCF 82-1, O'Brien, testifies. I did not have discretion, he was saying. I'm paraphrasing. But I wasn't making my own findings at all. There's testimony from Tate Stanford. There's testimony from lots of people on the record that they are not actually making decisions at that hearing. The second category, in addition to the informal policies of a few judges, which is not articulated in a sentencing document or anything like that, in addition there is the detainer policy, which requires detention, does not give discretion to the hearing officers for certain kinds of charges. That's a separate category, right? And then a third category, obviously, is that we have alleged that they're actually not making genuine probable cause findings, precisely because they're not permitting people to even understand what's being alleged or to contest them. But I want to get to some of these disputed issues of fact, because there's a lot of generalities being floated, but I just want to specifically address a few things. First, they say that 75% of our own spreadsheet shows people could speak. This is a red herring. What does it mean to speak, right? So a court watcher says somebody spoke, but the actual testimony at the hearing is that when they started trying to address the actual things at the hearing, sure, they can speak and say their name and say hello, but when they actually start trying to argue, they're cut off. That's what the evidence shows. Now, we may lose this before a fact finder and Plaintiff's Tate and Damon Jones, who testified that they were cut off and they couldn't speak. They may go to a jury on their claims and they may lose. We may not be able to meet class certification. But at this posture, there was a preliminary injunction on a very narrow claim about mandatory detention. People testified that they couldn't speak, they couldn't confer with their lawyer, and that's where we are here. So we need to go back to the district court and actually figure out, like, why aren't people able to speak? Now, they also said, well, there's a lawyer. That doesn't sound like it's amenable to class-wide treatment. That's a problem. If someone stands up and says, you know, in fact, this guy owed me money and so I took it and so it wasn't really theft and the judge cuts him off and says that's not legally relevant, like, you know, you're inferring a class-wide policy, but it just it sounds like this is just going to be about individual determinations. This is not like a rule that says you can't speak. It's just some people were speaking and then they got cut off. And like, was it legitimate or not? I'm not sure why we're here on a class basis. Your Honor, since we're speculating, I'll just say I've done a lot of these cases all over the country. There are many situations where discovery reveals that before a person walks into their jail room, a sheriff says don't speak, that they're told by the judges at the top of the hearing, this is not a time to talk about your case. Who knows what's going to be discovered, but we certainly have evidence already that people are being cut off. We certainly have evidence already on a class-wide basis that nobody is given time to even meet with their lawyer or notice of the charges. So whether or not the evidence ultimately shows that we're going to be able to show class-wide relief is, I agree with you, it's an uphill battle in our legal system to win class-action lawsuits on things like this. And we may at the end of the day not prevail as a class, but that's speculation right now. We have certainly, as the judge themselves noted in denying the motion to dismiss, we have plausibly alleged legal claims. Well, and it could be that if it goes back, the district court judge says there are four plaintiffs whose cases are going to proceed. Absolutely. Because this is what happened to them and may not get class certification. And we've done independent investigation since that hearing, and we have other facts that we intend to present. There are a lot of things going on here that explain, and this is a point that I think is just absolutely essential to understand. The judge said that there was no reason that they could tell in the record about why people weren't meeting with their lawyers. Well, it's not our burden to show why, but the record does explain that people were not able to meet with their lawyers. That's something that we're going to be able to explore below. All right. Thank you, counsel. Thank you. We thank both counsel for their excellent briefing and moral argument today in this interesting case. We'll take the case under advice.